Alfred L. STONE, d/b/a Stone
Enterprises, Plaintiff–
Appellant,

v.

MID INDIANA SERVICE COMPANY,
INC., and John Conarro,
Defendants–Appellees.

No. 04–2073.

United States Court of Appeals,
Seventh Circuit.

Submitted Oct. 26, 2004.*

Decided Nov. 4, 2004.

* After an examination of the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the brief and the record. *See* Fed. R.App. P. 34(a)(2).

Alfred L. Stone, Indianapolis, IN, pro se.

Donald E. Currie, Delphi, IN, for Defendants–Appellees.

Before BAUER, WOOD, and WILLIAMS, Circuit Judges.

## ORDER

Alfred Stone, an African–American plumbing contractor, brought this suit for damages under 42 U.S.C. § 1981, alleging that he was denied the opportunity to contract with MID Indiana Service Company, Inc., because of his race. Stone alleged that MID Indiana, through its president John Conarro, violated § 1981's guarantee of the right to make and enforce contracts, regardless of race, when it hired an allegedly unlicensed white plumber. The district court granted summary judgment for MID Indiana, finding that Stone failed to demonstrate a prima facie case of discrimination under *McDonnell Douglas* burden-shifting analysis and, in any event, could not show that the lower price quoted by the white plumber was a pretextual reason for MID Indiana's contracting decision. After granting summary judgment, the district court declined to exercise pendent jurisdiction over Stone's state law claims for retaliation, negligence, and intentional infliction of emotional distress or the defendants' counterclaim for attorney fees and costs. Stone appeals the grant of summary judgment, and we affirm.

Stone sought an employment contract in October 2002 to perform plumbing work on a gas station project managed by MID Indiana, an Indiana corporation dealing in real estate. Several days after Stone submitted a bid for $13,725.77 he met with Conarro to discuss revisions to the project's blueprints, which could affect the bid. At the conclusion of this meeting Stone alleges that Conarro made state-ments expressing concern that MID Indiana's equipment would be damaged or stolen while the company completed the gas station project in a predominantly black neighborhood. On the same day, Conarro also received a bid from David Stegemiller, a white plumber, for $7,500. Although Conarro supposedly informed Stone that he would receive new blueprints, Stone claims that Conarro intentionally failed to deliver the revised blueprints and instead accepted Stegemiller's lower bid. Stone also asserts that the lower bid was predicated on the ability of Stegemiller, an allegedly unlicensed plumber not authorized to do business in Indiana, to provide below-market labor rates. Conarro, however, denies that he knew Stegemiller was unlicensed. MID Indiana asserts that the only bases for its contracting decision were quality of workmanship and price.

Stone argued to the district court that he could offer direct proof of racial discrimination based on Conarro's remark that a black neighborhood would not be a safe or secure place to work. The district court, however, ruled that this did not amount to direct evidence of discrimination. Applying the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the court granted the defendants' motion for summary judgment, finding that Stone did not allege a prima facie case and, even if a prima facie case of discrimination did exist, that he did not present evidence that MID Indiana's price and workmanship criterion were pretext for choosing a white plumber. Within ten days of the judgement Stone filed a motion for reconsideration, which the court interpreted as a motion to alter or amend the judgement under Rule 59(e), alleging that the court used the wrong legal standard when it applied *McDonnell Douglas* and

that it generally erred by not finding that Conarro acted with blatant racial animus. The court denied the motion.

We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to Stone, the non-moving party. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 502 (7th Cir.2004).

■ Stone first contends that his § 1981 claim should have succeeded based on his direct evidence of discrimination. He points to Conarro's alleged comment about the gas station being susceptible to crime. Stone suggests that this comment, after taking into consideration the location of the gas station in a black neighborhood, reveals Conarro's belief that "blacks would cheat and steal from him." Based on this characterization of Conarro's attitude, Conarro's failure to provide revised plans, and Conarro's decision to hire Stegemiller, Stone argues that the circumstantial evidence should be construed as direct evidence of discrimination.

"Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 616 (7th Cir.2000). "A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir.2004) (quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir.1994)).

Taken in the light most favorable to Stone, the alleged evidence of discrimination is far from an admission of racial animus in the contract decision by Conarro and, even taken with Conarro's alleged failure to provide revised plans to Stone, does not "point directly to a discriminatory reason for the employer's action." *Adams*

*v. Wal–Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir.2003). The fragmented circumstantial evidence highlighted by Stone does not form the "convincing mosaic" we require in order to find discrimination without an admission by the decisionmaker. *Troupe*, 20 F.3d at 737. The district court, therefore, correctly concluded that Stone could not succeed on direct evidence alone.

■ Stone next argues that the burden-shifting analysis employed by district court improperly relied on factors relevant only to the employment context, rather than contracting. He suggests this application of an incorrect legal framework led the district court to determine that he could not establish a prima facie case of discrimination.

Section 1981 contracting claims, however, are governed by the same analysis as Title VII employment claims when direct evidence of discrimination is not offered. *See Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir.1999). In the course of applying this Title VII-like analysis, the district court stated that Stone failed to allege a prima facie case because he did not show the fourth element of the prima facie case, that "the position remained open and the business seeking to fill the position continued to seek applicants." But, as the Court acknowledged in *McDonnell Douglas*, "the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n. 13.

■ We need not resolve the question regarding the elements of the prima facie case, however, because the district court offered a stronger ground for summary judgment—namely Stone's failure to create a genuine issue of fact regarding pre-

text. Stone argues that he demonstrated pretext by showing that Stegemiller was unlicensed and therefore could not provide quality workmanship. That Stegemiller was unlicensed, Stone suggests, lends credence to the view that MID Indiana did not conform to its own stated reasons for choosing Stegemiller.

To demonstrate pretext Stone "must produce 'significantly probative admissible evidence' from which the trier of fact could infer that the employer's reason was false and that the actual reason was discriminatory." *Jones v. Union Pacific R. Co.*, 302 F.3d 735, 742–43 (7th Cir.2002) (quoting *King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir.1999)). Stone, however, cannot meet this standard. Conarro denied knowing Stegemiller was either unqualified or unlicensed and Stone's only evidence to the contrary is an Indiana Licensing Agency letter, dated almost one year after the contracting decision, stating that Stegemiller was not a licensed plumber at that time. This supposed evidence, however, is insufficient to establish that Conarro acted contrary to the stated factors of quality workmanship and price, or even that Stegemiller was in fact unlicensed at the time of the contract. "[T]he issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir.1992). Because the evidence offered by Stone, construed in his favor, does not suggests an unlawful purpose by Conarro or MID Indiana, the district court correctly determined that Stone did not create a genuine issue of fact as to pretext.

AFFIRMED.